J-S43040-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| SHAWN LAMAR BURTON | : | |
| | : | |
| Appellant | : | No. 197 WDA 2020 |

Appeal from the PCRA Order Entered January 23, 2020
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0004276-1993

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| SHAWN LAMAR BURTON | : | |
| | : | |
| Appellant | : | No. 198 WDA 2020 |

Appeal from the PCRA Order Entered January 23, 2020
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0004017-1993

BEFORE: SHOGAN, J., STABILE, J., and KING, J.

MEMORANDUM BY KING, J.:                    **FILED JANUARY 29, 2021**

Appellant, Shawn Lamar Burton, appeals from the order entered in the Allegheny County Court of Common Pleas, which dismissed his current petition filed under the Post Conviction Relief Act ("PCRA").[1]  We affirm.

---

[1] 42 Pa.C.S.A. §§ 9541-9546.

Our Supreme Court summarized the underlying facts of this appeal as follows:

On March 9, 1993, at approximately 12:15 p.m., Officer Gary Fluman, a correctional officer at the Allegheny County Jail, received a report from an inmate that there was a problem on Range 17, in the East Block of the jail. After requesting backup, Officer Fluman approached Cell 17–S. A group of inmates was gathered outside the cell and advised Officer Fluman that someone was under the bed and would not come out. Initially, Officer Fluman could see only the mattress and bedding, but, when he entered the cell and removed the mattress and bedding, he observed that inmate Seth Floyd had a ligature consisting of a shoe lace and a piece of nylon cord tied around his neck; the other end of the ligature was tied to a chain that holds the bed to the wall. Officer Fluman could not detect a pulse, and another officer who had arrived on the scene radioed for a doctor. A third officer cut the ligature, and the doctor unsuccessfully attempted to revive Floyd. Following an autopsy, it was determined that Floyd died as a result of asphyxiation due to ligature strangulation, and the manner of death was listed as pending due to suspicious circumstances.

During their investigation into Floyd's death, correctional officers interviewed several inmates. One inmate reported that he was walking past Floyd's cell on his way to lunch and observed [Appellant] and another individual, Melvin Goodwine, engaged in conversation with Floyd inside his cell. When confronted with this information, Goodwine admitted that he had been in Floyd's cell for a short time. [Appellant], however, denied being in the vicinity of Floyd's cell around the time of Floyd's death, and, in fact, denied ever being in Floyd's cell. [Appellant] later admitted that he was near Floyd's cell at the time he died, but maintained that he had never been inside Floyd's cell.

Two other inmates reported that, a few minutes before Floyd was found dead, they observed [Appellant] and Goodwine in Floyd's cell, wrestling him onto his bunk and pinning him while he struggled to free himself. One of these two witnesses also stated that, shortly after he observed the

- 2 -

physical altercation among [Appellant], Goodwine, and Floyd, he saw [Appellant] and Goodwine run down the stairs, away from the area of Floyd's cell. Another witness reported that, a few days before Floyd's death, he overheard a conversation between [Appellant] and Goodwine in which [Appellant] told Goodwine that they needed to "fix that guy from California." The witness explained that it is common knowledge in prison that the term "fix" means kill. Further, it was confirmed that Floyd originally was from California, having recently moved to the Pittsburgh area. Based on the above evidence, [Appellant] and Goodwine were charged with Floyd's murder.

[Appellant] and Goodwine were tried jointly before the Honorable Donna Jo McDaniel. On September 28, 1993, [Appellant] was convicted of first-degree murder and conspiracy, and Goodwine was convicted of conspiracy. [Appellant] was sentenced to a mandatory term of life imprisonment; Goodwine was sentenced to 5 to 10 years' imprisonment. [Appellant] appealed his judgment of sentence, which was affirmed by the Superior Court. [The Pennsylvania Supreme] Court denied his petition for allowance of appeal on August 15, 1997.

On August 4, 1998, [Appellant] filed his first *pro se* PCRA petition, asserting various claims of ineffective assistance of counsel. After a series of procedural irregularities not relevant herein, [Appellant] filed an amended PCRA petition on October 5, 2005. The PCRA court dismissed [Appellant's] amended PCRA petition on December 12, 2005, and the Superior Court ultimately affirmed the PCRA court's dismissal on February 21, 2007.

On May 30, 2013, [Appellant] received a letter from Charlotte Whitmore, a staff attorney with the Pennsylvania Innocence Project. The letter, dated May 23, 2013, included a copy of a *pro se* "Motion for Partial Expunction of Adult Criminal Record" … filed by Goodwine on July 29, 2009. In the Motion to Expunge, Goodwine asserted that he murdered Floyd "in self-defense," but was "advised not to use this defense at trial." Goodwine further averred in the motion that "an innocent man went to jail for a crime that [Goodwine] committed." According to Attorney Whitmore, she received copies of the Motion to Expunge and the trial

court's subsequent opinion denying the motion from Twyla Bivins, who claimed to have received the documents from Goodwine's ex-girlfriend. In her letter to [Appellant], Attorney Whitmore explained that the Innocence Project had not yet determined whether it would become involved in [Appellant's] case, but advised him that, if he was not previously aware of the averments made by Goodwine in his Motion to Expunge, [Appellant] had 60 days to file a PCRA petition based on this "new evidence."

On July 11, 2013, [Appellant] filed *pro se* a second PCRA petition asserting, *inter alia*, that Goodwine's Motion to Expunge and the statements contained therein constituted newly-discovered exculpatory evidence that was unavailable at the time of his trial and which would have changed the outcome of his trial if the evidence had been introduced…. On August 6, 2013, the PCRA court issued notice of its intention to dismiss [Appellant's] petition without a hearing pursuant to Pa.R.Crim.P. 907 on the grounds that it was untimely; that [Appellant] failed to aver any exceptions to the PCRA's time requirements; that the petition was patently frivolous and without support on the record; that there were no genuine issues concerning any material fact; and that no purpose would be served by an evidentiary hearing. On August 21, 2013, [Appellant] filed a response to the PCRA court's Rule 907 notice, and six days later, the PCRA court dismissed [Appellant's] PCRA petition as "patently frivolous and without support on the record."

[Appellant] filed a timely appeal to the Superior Court, and complied with the PCRA court's instruction to file a statement of matters complained of on appeal pursuant to Pa.R.A.P. 1925(b). In his 1925(b) statement, [Appellant] claimed, *inter alia*, that he qualified for an exception to the PCRA's time limitations pursuant to 42 Pa.C.S. § 9545(b)(1)(ii), which provides that, where "the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence," a petition may be filed within 60 days of the date the claim could have been presented.

\* \* \*

On August 25, 2015, … the *en banc* Superior Court vacated

the PCRA court's order dismissing [Appellant's] second PCRA petition, and remanded for an evidentiary hearing.

***Commonwealth v. Burton***, 638 Pa. 687, 690-95, 158 A.3d 618, 620-23

(2017) ("***Burton I***") (internal citations and footnotes omitted).

A prior panel of this Court set forth the subsequent procedural history

of this appeal as follows:

> [T]he *en banc* panel of this Court … rejected the notion that because Goodwine's motion to expunge was a public record, we were constrained, under our Supreme Court precedent, to presume that it could not be considered "unknown" by [Appellant].  Instead, we opined that such a presumption cannot be reasonably applied to *pro se*, incarcerated petitioners.  Accordingly, the … majority held that "the presumption of access to information available in the public domain does not apply where the untimely PCRA petitioner is *pro se*."  Applying that law to [Appellant's] case, the … panel concluded that "without the benefit of an evidentiary record developed below, [Appellant's] diligence may be sufficient," and that he had "raise[d] genuine issues of material fact that warrant development."  Consequently, we vacated the PCRA court's order denying [Appellant's] petition and remanded for an evidentiary hearing.
>
> The Commonwealth filed a timely petition for allowance of appeal….  On March 28, 2017, our Supreme Court affirmed…..  Thus, [Appellant's] case was remanded for an evidentiary hearing to ascertain, without application of the public-record presumption, whether Goodwine's statement in his motion to expunge was unknown to [Appellant], and whether he exercised due diligence in discovering it.
>
> Judge McDaniel again presided over the PCRA proceedings on remand.  Before she conducted an evidentiary hearing on [Appellant's] claim involving Goodwine, [Appellant] (who had retained [current counsel ("PCRA counsel")] to represent him) filed a "Supplemental Amended PCRA Petition" on September 18, 2017.

\*    \*    \*

Judge McDaniel accepted [Appellant's] supplemental petition and … held an evidentiary hearing on October 5, 2017, to address [Appellant's] claims premised on Goodwine's confession in his motion to expunge.

At that proceeding, Judge McDaniel initially heard evidence regarding how [Appellant] had discovered Goodwine's expungement motion. She then concluded that [Appellant] had not previously known that information, and that he had acted with due diligence in discovering it, thereby satisfying the timeliness exception of 42 Pa.C.S. § 9545(b)(1)(ii).

Judge McDaniel then turned to the merits of the substantive, newly-discovered evidence claim. In this regard, [PCRA counsel] first explained to the court that he wished to call Goodwine, who was present at the proceeding, to the stand to testify, but that he was informed Goodwine intended to invoke his Fifth Amendment right not to testify. Goodwine's counsel, who had been appointed by Judge McDaniel, confirmed that Goodwine intended to exercise his "right to remain silent because his answers may tend to incriminate him." When the Commonwealth pressed counsel "as to what crime" Goodwine was claiming his testimony might implicate him, his counsel stated: "Perjury, unsworn falsification to authorities, and homicide in the federal courts." Thereafter, Goodwine took the stand and stated the following as to each question posed about his motion to expunge: "On the advice of my counsel, I exercise my Fifth Amendment right to remain silent because my answers may tend to incriminate me." The PCRA court accepted Goodwine's invocation and excused him from the proceeding.

[PCRA counsel] then admitted Goodwine's expungement motion without objection by the Commonwealth. The parties offered argument concerning, *inter alia*, whether that document would be admissible as substantive evidence if [Appellant] were afforded a new trial and Goodwine again refused to testify. [PCRA counsel's] position was that Goodwine's statements in that document would be admissible as substantive evidence under the 'statement against interest' exception to the rule against hearsay. The Commonwealth did not offer a rebuttal argument.

- 6 -

Ultimately, at the close of the hearing, Judge McDaniel denied [Appellant's] newly-discovered evidence claim, explaining her decision, in pertinent part, as follows:

[The Court]: … [T]here was a prior hearing[,] and I do not have the day for it[,] where [] Goodwine did testify. I found him not to be credible. This seems to be, to me at the time, a manufactured scheme since Goodwine was protected by the double jeopardy clause and what did he have to lose. He had nothing to lose by coming in and helping out a fellow inmate or friend o[r] whatever kind of coconspirator, what kind of relationship they had.

That being said, I have already found [] Goodwine to be incredible at a prior hearing. He refused to testify today. And I feel that both of these outweigh a typewritten motion for expungement and, therefore, the PCRA [petition] as to this issue is denied.

\* \* \*

On February 22, 2018, Judge McDaniel entered an order denying [Appellant's] petition, and stating that "[a] new trial will not take place." [Appellant] filed a timely notice of appeal….

***Commonwealth v. Burton***, No. 451 WDA 2018, unpublished memorandum at 5-10 (Pa.Super. filed May 24, 2019) ("***Burton II***") (internal citations and footnotes omitted).

On May 24, 2019, this Court vacated the order denying PCRA relief in part and remanded the matter for further proceedings. Specifically, this Court determined that Judge McDaniel did not err in concluding that Appellant had satisfied the newly-discovered fact exception to the timeliness requirements of the PCRA. ***See id.*** at 12. This Court also concluded "there was no evidence

- 7 -

presented at the PCRA hearing on October 5, 2017, to support Judge McDaniel's reasons for finding Goodwine's confession incredible."[2]  *Id.* at 22. Consequently, this Court "vacate[d] the PCRA court's order to the extent it denied [Appellant's] after-discovered evidence claim premised on Goodwine's confession in his motion to expunge[.]"  *Id.* at 23.  Upon remand, this Court instructed the PCRA court to

> make credibility determinations regarding Goodwine's confession that are supported by the record before it.  If the court finds Goodwine's confession credible, it must then assess whether his statements in the motion to expunge would be admissible as substantive evidence, and whether that evidence would likely result in a different verdict if a new trial were granted.

*Id.* at 24.

Upon remand, the case was reassigned to Judge Flaherty.[3]  On September 9, 2019, Appellant submitted a memorandum of law in support of his claim that Goodwine's confession was credible.  Appellant's memorandum

_____

[2] This Court expressly recognized four reasons for Judge McDaniel's finding Goodwine's confession incredible: "(1) she had found Goodwine's testimony incredible at a prior hearing, … (2) Goodwine refused to testify at the PCRA hearing, … (3) Goodwine was protected by the prohibition against double jeopardy and, thus, he likely felt he had nothing to lose by adding a confession to his expungement petition, … and (4) the inescapable conclusion … was that [Goodwine's confession] was a concocted scheme between [Appellant] and Goodwine[.]"  *Burton II, supra* at 19 (internal citations and quotation marks omitted).

[3] Judge McDaniel left the bench before this Court's remand.  (*See* Findings of Fact and Conclusions of Law, dated 1/2/20, at 2).

included certain parole board records for Goodwine, which Appellant had obtained only after submitting the instant PCRA petition.[4] One of the parole records was a 2009 form titled "Offender's Written Version of Offense," wherein Goodwine also confessed to killing Floyd. (**See** Memorandum of Law, filed 9/9/19, at 2).

The PCRA court conducted another hearing on October 3, 2019. At that time, the parties did not present additional witnesses. Rather, the parties elected to provide oral argument limited to the matters in the remand instructions from **Burton II**. On January 2, 2020, the PCRA court issued Pa.R.Crim.P. 907 notice of its intent to dismiss Appellant's petition without further proceedings. That same day, the court also issued findings of fact and conclusions of law. The court considered the evidence and arguments from counsel, and it made the following credibility determination:

> The credibility assessment of Goodwine's statements is limited to the circumstances surrounding their making, as Goodwine's testimony cannot be compelled. Initially, [the PCRA c]ourt notes that at the time Goodwine drafted and submitted the Motion for Partial Expunction, he had not yet drafted and submitted his statement to the [parole board]. As such, there is a factual inaccuracy within his Motion, as he claimed to have already submitted his statement to the

---

[4] Appellant claimed to have received Goodwine's parole records on October 19, 2017, and he first raised arguments related to these records on appeal from Judge McDaniel's 2018 order denying PCRA relief. **See Burton II, supra** at 24 n.10. This Court decided to "leave it to the discretion of the PCRA court whether it will permit [Appellant] to present this evidence to supplement his Goodwine claim on remand." **Id.** The PCRA court subsequently permitted Appellant to supplement the record with Goodwine's parole board documents. (**See** Findings of Fact and Conclusions of Law at 2).

[parole board]. Further, the purpose of his Motion was to expunge the homicide charges from his record. [The PCRA c]ourt finds that Goodwine made the statements in his Motion in order to receive a personal benefit, which diminish their reliability.

Additionally, Goodwine was well aware that the [parole board] requires an offender to accept responsibility for his crime as a consideration of parole. It was not until after he was denied parole on this basis that Goodwine made this written statement. It is significant to note that Goodwine did not admit to conspiracy to commit murder, which is the crime for which he was convicted. Rather, he stated that he killed Floyd in self-defense. This assertion is contrary to the evidence presented at trial….

Taking all of the facts and circumstances into consideration, [the PCRA c]ourt does not find Goodwine's statement to bear the necessary indicia of reliability to deem it to be credible.

(Findings of Fact and Conclusions of Law at 4-5).

Ultimately, the court dismissed Appellant's PCRA petition on January 23, 2020. On January 30, 2020, Appellant timely filed separate notices of appeal for each of the underlying docket numbers, which this Court consolidated *sua sponte*. The PCRA court did not order Appellant to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal, and none was filed.

Appellant now raises three issues for our review:

The PCRA court's credibility findings regarding Melvin Goodwine's confessions are wrong and [are not] supported by the record.

The PCRA court erred by not addressing [Appellant's] meritorious arguments regarding why Melvin Goodwine's confessions would be admissible as substantive evidence at a retrial because—at a retrial—[Appellant] would compel Melvin Goodwine to take the stand, using his compulsory

- 10 -

process right, and force Melvin Goodwine to answer questions about his confessions, and Melvin Goodwine would have to answer these questions because—at this point—Melvin Goodwine has no Fifth Amendment right to remain silent.

The PCRA court's conclusion that Melvin Goodwine's credible confessions [would not] likely produce different verdicts at a retrial is wrong and not supported by the record.

(Appellant's Brief at 2).

Our standard of review of the denial of a PCRA petition is limited to examining whether the evidence of record supports the court's determination and whether its decision is free of legal error. ***Commonwealth v. Conway***, 14 A.3d 101 (Pa.Super. 2011), *appeal denied*, 612 Pa. 687, 29 A.3d 795 (2011). This Court grants great deference to the findings of the PCRA court if the record contains any support for those findings. ***Commonwealth v. Boyd***, 923 A.2d 513 (Pa.Super. 2007), *appeal denied*, 593 Pa. 754, 932 A.2d 74 (2007). We do not give the same deference, however, to the court's legal conclusions. ***Commonwealth v. Ford***, 44 A.3d 1190 (Pa.Super. 2012).

Traditionally, credibility issues are resolved by the trier of fact who had the opportunity to observe the witnesses' demeanor. ***Commonwealth v. Abu-Jamal***, 553 Pa. 485, 720 A.2d 79 (1998), *cert. denied*, 528 U.S. 810, 120 S.Ct. 41, 145 L.Ed.2d 38 (1999). "A PCRA court passes on witness credibility at PCRA hearings, and its credibility determinations should be provided great deference by reviewing courts." ***Commonwealth v. Johnson***, 600 Pa. 329, 356, 966 A.2d 523, 539 (2009).

In his first issue, Appellant raises multiple arguments to counter the PCRA court's conclusion that Goodwine's confession was not credible. Regarding the court's finding of a "factual inaccuracy" in the expungement motion based upon Goodwine's claim that he had already submitted a statement to the parole board, Appellant contends the court's finding is based upon faulty assumptions not of record. Appellant maintains there is "nothing in the record proving Goodwine [did not] provide a written statement to the [parole board] before July 29, 2009," which was the filing date for the expungement motion. (Appellant's Brief at 25). Appellant emphasizes that the court must have assumed that the parole board disclosed Goodwine's entire file in October 2017. Appellant suggests such an assumption is improper, it is possible that other written statements from Goodwine were not disclosed, and the record cannot support a finding that Goodwine never provided a written statement to the parole board before filing his expungement motion.

Regarding the court's finding that Goodwine confessed to receive a personal benefit, Appellant argues the PCRA court did not identify the benefit Goodwine sought. Assuming the benefit sought was the expungement of the murder charge, Appellant insists "the PCRA court never explained why Goodwine's desire to have his murder charge expunged rendered his expungement motion confession unreliable." (*Id.* at 27). If the benefit sought was obtaining parole, Appellant complains that the court's finding "represents

nothing more than the 'curry favor' argument" espoused during earlier stages of the case.[5]  (*Id.* at 27-28).

As to the PCRA court's finding that Goodwine did not provide a written statement until after he was denied parole in 2008, Appellant again contends that the PCRA court improperly assumed that "Goodwine's 2008 written and verbal statements to the [parole board] had to be different from his 2009 written and verbal statements because the [parole board] denied his 2008 parole request."  (*Id.* at 28).  Appellant reiterates that there is "nothing in the record indicating Goodwine's 2008 accounting differed from his 2009 accounting, and the PCRA court [cannot] be permitted to find as such simply because it assumes this difference into existence."  (*Id.* at 29-30).

_____

[5] Appellant's mention of the "curry favor" argument is a reference to a theory advanced by the Commonwealth during the prior appeal.  This Court previously summarized the argument as follows:

> Although **Judge McDaniel did not premise her credibility determination on a conclusion that Goodwine's confession was fabricated solely to obtain parole**, the Commonwealth presents this argument on appeal.  In particular, the Commonwealth maintains that, because Goodwine stated in his motion to expunge that he was required to take "full responsibility" for his crime to be paroled, it is apparent that Goodwine confessed "to curry favor with the parole board by making a claim that he thought would most likely result in being paroled…." Commonwealth's Brief at 32, 33.

*Burton II, supra* at 21 n.8 (emphasis added).  In addition to summarizing the Commonwealth's argument, this Court also set forth Appellant's response. This Court characterized Appellant's response as "a convincing counter," without providing any further analysis of the argument.  *Id.*

Finally, Appellant attacks the PCRA court's finding that Goodwine's confession was unreliable, in part, because it was contrary to the trial evidence. Appellant admits Goodwine wanted to obtain parole. Nevertheless, Appellant posits that Goodwine's presentation of "a narrative to the [parole board] that is markedly different than the narrative presented at trial" was "the worst possible way of obtaining parole[.]" (*Id.* at 30). For this very reason, Appellant insists Goodwine's "willingness to jeopardize his own freedom is what makes his 'loan wolf' confession credible." (*Id.* at 31). Based upon the foregoing, Appellant concludes the record does not support the PCRA court's credibility determinations. We disagree.

To obtain relief based upon after-discovered evidence under the PCRA, a petitioner must establish:

> (1) the evidence has been discovered after trial and it could not have been obtained at or prior to trial through reasonable diligence; (2) the evidence is not cumulative; (3) it is not being used solely to impeach credibility; and (4) it would likely compel a different verdict.

*Commonwealth v. Washington*, 592 Pa. 698, 715, 927 A.2d 586, 595-96 (2007). If the after-discovered evidence is incredible, it would not compel a different outcome and the PCRA court must deny the request for a new trial. *See Commonwealth v. Small*, 647 Pa. 423, 189 A.3d 961 (2018) (explaining PCRA court needed to, in first instance, assess credibility of after-discovered recantation in light of evidence as whole; unless PCRA court is satisfied that after-discovered evidence is credible, it should deny new trial).

Instantly, Appellant's 2013 PCRA petition included a copy of Goodwine's expungement motion. (**See** PCRA Petition, filed 7/11/13, at Exhibit 2). The motion unambiguously sets forth Goodwine's motivations for seeking relief:

> It is very important concerning the petitioner's future employment, housing, and education that the current status in my documented criminal record be corrected by expungement. The adverse consequence the petitioner may endure should expunction be denied is that I may be denied employment, housing, and education. Also, it has hindered and negatively influenced my chances for such things as reduction of prison custody level, promotional transfers, institutional job training, and self-help programs. The petitioner's arrest record will prejudice my future employment, housing, and educational opportunities.
>
> This will cause me to suffer further humiliation and embarrassment upon release. There is no legitimate state interest or benefit to law enforcement to maintain an arrest record that ended in a dismissal.

(Exhibit 2 of PCRA Petition, dated 7/29/09, at ¶6) (full capitalization omitted). In addition to explaining Goodwine's motivations, the petition provides Goodwine's confession that he killed Floyd "on my own in self-defense," and "an innocent man went to jail for a crime that I committed." (**Id.** at ¶5).

Appellant's PCRA filings upon remand also included many of Goodwine's parole board records.[6] (**See** Reproduced Record included with Memorandum

---

[6] The record includes the original Right-To-Know Law request form, seeking "any and all documentation relating to the parole application and file for Melvin Goodwine….." (Reproduced Record included with Memorandum of Law at 98). Significantly, the response from the parole board indicated that it granted the request in part, because certain items in Goodwine's parole file were not considered "public" under the law. (**Id.** at 100-01).

of Law, filed 9/9/19, at 98-133). These records included Goodwine's "written version of offense," in which he admitted that: 1) he went to Floyd's cell for a fight; 2) the fight escalated; and 3) during the struggle, Goodwine strangled Floyd with a shoelace. The "written version of offense" did not mention Appellant or his conviction for the murder.

After considering this evidence and the arguments from counsel, the PCRA court found Goodwine's confession to be incredible. The court concluded that, among other things, Goodwine sought to receive a personal benefit as a result of his confession. Although Appellant claims the court did not adequately identify the personal benefit Goodwine sought, we cannot agree with this assertion. When viewed in context, the court's findings of fact and conclusions of law demonstrate that the personal benefit sought by Goodwine was the improvement to his life that would come from expungement. (**See** Findings of Fact and Conclusions of Law at 3-4).

Here, the record supports the court's finding that the reliability of Goodwine's statements was diminished by his attempt to receive a personal benefit. On this basis alone, the court's credibility determination was proper.[7]

_____

[7] To the extent Appellant also complains about "assumptions" made by the PCRA court, we reiterate that Appellant bore the burden of establishing his entitlement to relief based upon after-discovered evidence. **See Washington, supra**. Rather than making assumptions, our review of the record reveals that the PCRA court simply analyzed the evidence Appellant submitted with his various PCRA filings. If such evidence did not accurately portray the state of Goodwine's parole records, this was due to Appellant's own inability to procure such records.

*See Johnson, supra*; *Boyd, supra*.  As the PCRA court properly determined that Appellant's after-discovered evidence is incredible, such evidence would not compel a different outcome at trial, and we need not analyze Appellant's remaining claims.  *See Small, supra*.  Accordingly, we affirm the order denying PCRA relief.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/29/2021